[No. 1419.  Decided December 18, 1894.]

MARY E. RICHMOND, *Appellant*, *v.* PETER VOORHEES, *Appellant*, MARY A. VOORHEES ET AL., *Respondents*.

HUSBAND AND WIFE—ATTORNEY IN FACT—POWER TO SIGN NOTE—ACKNOWLEDGMENT—PARTNERSHIP—USE OF LAND—MORTGAGE OF PARTNERSHIP LAND—NOTICE.

In an action upon an instrument executed by an attorney in fact, which is made a part of the complaint, it is sufficient to allege the execution by the principal without setting out that the agent had been constituted attorney in fact for the purpose of its execution.

Under the laws of this state which make it competent for the wife to authorize her husband to execute a mortgage in her behalf, there is necessarily included the power to authorize him to execute a promissory note in her name.

A power of attorney by a wife to her husband authorized him " To borrow, upon such terms and conditions as he may deem best, any sum or sums of money, and to sign and deliver any promissory note or notes for the payment of the same, and to execute and de-liver as *collateral* thereto any mortgage or mortgages covering any real estate or other property situated in said state of Washington owned by me or in which I have any interests." *Held*, that the pri-mary object of the power was to enable the husband to borrow money upon the faith of himself and wife, and as incident thereto to execute a note and mortgage upon their property, including that which the wife owned in her individual capacity or as a member of the community.

A certificate of acknowledgment to a mortgage executed by hus-band and wife, the latter by power of attorney, after setting out the appearance and acknowledgment by the husband, continued in the following manner: "And I do further certify that personally appeared Peter Voorhees, personally known to me to be the same person whose name is subscribed to the within instrument as the attorney in fact of Mary A. Voorhees, his wife, and the said Peter

Voorhees duly acknowledged to me that he subscribed the name of Mary A. Voorhees thereto as principal, and his own name as attorney in fact, and that said Peter Voorhees acknowledged to me that he executed the same freely and voluntarily and for the uses and purposes therein mentioned." *Held*, that such certificate shows a sufficient acknowledgment by the husband in behalf of the wife, as well as in his own behalf.

Only the use of lots and buildings thereon is contributed to a partnership, under an agreement reciting that a partner contributes as his capital any and all buildings on such lots, it being understood and agreed that the "title to and ownership of" such lots is in, and they are the "sole property" of such partner.

One who loans money to an individual partner, taking back a mortgage on partnership land of which such partner holds the legal title, has a priority therein over a receiver of the partnership, where the mortgagee had no notice of the partnership equities.

*Appeal from Superior Court, Pierce County.*

*Hoxie & Richardson* and *W. H. Bogle*, for appellant Richmond.

It is never necessary in declaring on obligations entered into under powers of attorney to allege the authority of the agent, but the pleadings should be in all respects as though executed by the principal. *Weide v. Porter*, 22 Minn. 429; *Burnham v. Milwaukee*, 69 Wis. 379; *St. John v. Griffiths*, 1 Abb. Pr. 39.

It is well settled that a power of attorney to execute a mortgage includes authority to make it in the form and with the provisions customarily used in the state or county where the land is situated. *Joseph v. City Bank*, 14 Wis. 331; *Wilson v. Troup*, 7 Johns. ch. 25; Jones, Mortgages, §§ 76, 129.

*J. F. Ramage*, for appellant Voorhees.

*J. A. Williamson*, for respondent Hice, receiver of Voorhees & Drake.

The opinion of the court was delivered by

HOYT, J.—This action was brought to foreclose a mortgage made by Peter Voorhees and Mary A. Voorhees, his wife, and they are named as defendants together with certain other persons who, it was alleged in the complaint,

claimed some interest in the property covered by the mortgage. From the decree rendered in the action the plaintiff and the defendant Peter Voorhees have each prosecuted an appeal to this court. From that fact it follows that the questions presented for our consideration are to a certain extent triangular. The plaintiff as appellant, attacks that part of the decree which held that Samuel Hice, as receiver of the firm of Voorhees & Drake, had the superior right to certain of the property covered by the mortgage. The appellant Voorhees attacks that part of the decree in favor of the plaintiff upon the ground that she was entitled to no relief whatever as against any of the defendants; and he attacks that part of it in favor of the receiver on the ground that his pleadings were insufficient to authorize the granting of any affirmative relief.

The argument of counsel has taken a wide range and covered a multitude of points; but we shall find it necessary to discuss only a few, and will first consider the questions raised as between the plaintiff and appellant Voorhees. It is contended on the part of said Voorhees that the plaintiff was entitled to no relief—first, for the reason that the complaint did not state facts sufficient to constitute a cause of action; and second, that there was no proof of the execution of the note or mortgage by the defendant, Mary A. Voorhees; and that the mortgage had never been by her acknowledged.

The reason for the first objection is that it appeared upon the face of the mortgage set out in the complaint that it was executed by Mary A. Voorhees, by her attorney in fact Peter Voorhees, and there was no allegation as to his having been constituted her attorney for that purpose. In our opinion the complaint was sufficient without such allegation. There was the general allegation that the mortgage had been executed by Peter Voorhees and Mary A. Voorhees, his wife, and the mortgage thereafter set out must be construed by the aid of this allegation. The contention that the two allegations are inconsistent, and that therefore the specific one must control to the exclusion of the general one, cannot

be sustained. The two allegations are not inconsistent with each other. There is nothing in the mortgage as set out which in any manner contradicts the general allegation that it was executed by Mary A. Voorhees. It is true that it does not show that it was executed by her·in person, but she could as well execute it by another as by herself. Besides, even if the complaint were insufficient in this regard, it would not authorize a reversal of the decree if upon the trial proper authority was shown for the execution of the instrument by said Mary A. Voorhees, by her attorney in fact.

It is claimed that the note was improperly admitted in evidence, for the reason that it was not shown that the husband had authority to execute it as attorney in fact for the wife. The power of attorney by which the husband was authorized to act for the wife was properly executed and was very comprehensive. Among other things which it authorized the husband as such attorney to do were the following:

"To borrow, upon such terms and conditions as he may deem best, any sum or sums of money, and to sign and deliver any promissory note or notes for the payment of the same, and to execute and deliver as collateral thereto any mortgage or mortgages covering any real estate or other property situated in said State of Washington owned by me, or·in which I have any interests."

This was clearly sufficient to authorize the execution of the note, if under our laws it is competent for the wife to authorize her husband to execute such an instrument in her behalf. It is conceded that under our statute he may be authorized to execute a mortgage, and in our opinion the power to authorize the execution of a note is included. Beside, under our laws, the relations of husband and wife are so changed that in the absence of an express statute allowing one to be constituted the attorney for the other, the power so to do would exist.

It is contended that the mortgage is void for the reason that the power to execute it was not included in the power of attorney. The reason for this contention is that by the

terms of such power of attorney the mortgage was to be executed as collateral to the note; and it is claimed that this would only authorize a mortgage for the purpose of securing the note without any other conditions or covenants than those necessary to make the property covered by the mortgage subject to the payment of the note in accordance with the conditions thereof.

This contention might have force, if nothing further appeared from the power of attorney than that the husband thereby was authorized to sign a note and execute a mortgage as collateral thereto; but from the quotation above set out it clearly appears that the husband was not only authorized to sign a note and execute a mortgage, but that the primary object of the power was to enable him to borrow money upon the faith of himself and his wife, and secure its payment by the execution of a mortgage upon property of either or both of them. And this being so, it must be held that it authorized the husband to do anything usual and necessary for that purpose, and that the authority to execute the note and mortgage was incident to the more general authority to borrow money. Thus construed, it authorized not only the execution of the note, with such terms as are usual and proper, but also a mortgage to secure the same, with all necessary and usual covenants demanded by those loaning money upon such security.

It is further objected that by the terms of the power of attorney only authority to deal with the separate estate of the wife was given the husband; and that it could have no force upon community property. But in our opinion it is evident from the power of attorney that it was intended thereby to authorize the husband to deal with any class of property in which the wife might have an interest in her individual capacity or as a member of the community.

The mortgage is further attacked upon the ground that the certificate of acknowledgment does not show that it was ever acknowledged by Mary A. Voorhees in person, or by Peter Voorhees as her attorney in fact. Such certificate contains the usual recital of the appearance and acknowledg-

ment of the instrument by Peter Voorhees, and thereafter the following :

"And I do further certify that personally appeared Peter Voorhees, personally known to me to be the same person whose name is subscribed to the within instrument as the attorney in fact of Mary A. Voorhees, his wife, and the said Peter Voorhees duly acknowledged to me that he subscribed the name of Mary A. Voorhees thereto as principal, and his own as attorney in fact ; and that said Peter Voorhees acknowledged to me that he executed the same freely and voluntarily and for the uses and purposes therein mentioned."

And in our opinion it showed a sufficient acknowledgment by the husband in behalf of the wife, as well as in his own behalf. If it had been intended thereby only to certify the acknowledgment by the husband for himself, there would have been no need of that part of the certificate of acknowledgment above set forth. Hence there could have been but one purpose on the part of the acknowledging officer in including it in his certificate, and that was to show a proper acknowledgment by the attorney in fact for and on behalf of his principal.

This disposes of the case so far as the controversy between the plaintiff as the holder of the note and mortgage, and the defendants, Peter Voorhees and Mary A. Voorhees, his wife, is concerned. The conclusion to which we have come as to the rights of the plaintiff as between her and the receiver, makes it unnecessary for us to decide the questions raised by appellant Voorhees against that part of the decree in favor of such receiver.

The controversy between the plaintiff and the receiver grew out of the fact that prior to the execution of the note and mortgage the defendant, Peter Voorhees, and one Drake had entered into a copartnership, which it was claimed had acquired an interest in the property covered by the mortgage or some part thereof. The partnership relation between said Voorhees and said Drake was evidenced by an agreement in writing, the material part of which was in the following language :

21-10W

"Whereas, the said Peter Voorhees is the owner of certain lots in the City of Tacoma, to-wit, lots Nos. 1, 2, 3 and 4, in block 7630 in Tacoma Land Company's First Addition, and also is the undivided one-half owner of lots 5 and 6, in said block 7630, and also is the owner of the buildings now erected on lots 1, 2, 3 and 4, and whereas, the said Bayard R. Drake is the undivided one-half owner of lots 5 and 6, aforesaid, and the owner and possessor of the sum of ten thousand dollars, lawful money of the United States of America. Therefore the said Peter Voorhees and Bayard R. Drake have agreed and by these presents do mutually agree by and between themselves, to be and become copartners together in the business of operating and handling and storing all kinds of grain, feed, hay, straw, etc., also for milling the same, also for buying and selling the same ; both for and on their own account as well as on commission, and to do any and all things thereto belonging under the firm name and style of Voorhees & Drake, upon the following terms and conditions, to-wit :

First—The said Peter Voorhees agrees to contribute as his capital to the said business the grain elevator and mill, and any and all buildings now erected on said lots 1, 2, 3 and 4 aforesaid, together with his undivided one-half interest in said lots in said block 7630 aforesaid, it being understood and agreed that the title to and ownership of said lots 1, 2, 3 and 4 is in, and they are the sole property of said Peter Voorhees. And the said Bayard R. Drake agrees to contribute as his capital to the said business the sum of ten thousand dollars," etc.

And it is claimed on the part of the receiver, who now represents said firm, that by the force of such agreement the property in question became the property of the firm, and that its creditors had a better right thereto than the mortgagee. It sufficiently appears from the record that at the time this partnership was entered into four of the lots had been purchased by Peter Voorhees from the Tacoma Land Company, from which he had received a contract entitling him to a conveyance of the title upon certain payments being made ; that the other two lots were purchased from said Land Company in the interest of the partnership, and a like contract taken in the name of Peter Voorhees ; that before said partnership was entered into said Voorhees had erected

substantial buildings upon the four lots first above referred to ; that the partnership continued in existence under the terms of the agreement until after the execution of the note and mortgage in question ; that before they were executed a representative of the plaintiff saw the property, the buildings upon which were then in the possession of said firm; that at the time the negotiations for the borrowing of the money for which said note and mortgage were given was commenced, the legal title to the six lots was in the Tacoma Land Company ; that the contracts therefor were still in the name of said Peter Voorhees ; that a part of the arrangement by which the money was procured from the plaintiff was that sufficient thereof to pay the Tacoma Land Company in full for the balance due upon the six lots was to be so applied, and that the deed therefor was to be taken in the name of said Voorhees, so that the title of record would be made perfect in him as a part of the transaction for the loaning of the money.

Under these circumstances it is contended by counsel for the receiver that by the partnership agreement the equitable title to the six lots was vested in the partnership, and that the possession by the firm of the buildings situated on four of the lots was notice to every one of the equities of the firm ; and that the mortgage lien was subject to such equities.

If we should agree with this construction of the partnership agreement and of the rights flowing from possession thereunder, we should still doubt the right of the receiver to the relief for which he contends. The equities of the firm would, even under that state of facts, be subject to the equities of the mortgagee to the extent that the money advanced by her was used in completing the payment for the property. But we are unable to construe the partnership agreement as contended for by the receiver. As to lots 5 and 6, which were bargained for in the interest of the partnership, it was probably the intention of the articles to show that fact, and that the title thereafter acquired should be in the partnership interest, notwithstanding the fact that the contract was in the name of said Voorhees. But as to the four lots upon

which the buildings were situated, we think it clearly appears that there was no intention to pass the title to the partnership. It might be questioned whether or not, even if such intention clearly appeared, it could have force, for the reason that the real estate sought to be conveyed was community property, and the articles were signed by the husband alone. But, however that may be, we can see no possible reason for the express reservation of the title to said lots to said Voorhees, if it had been the intention to convey it to the partnership.

The articles of agreement show upon their face that they were not drawn with technical accuracy, and we think that the most reasonable interpretation of them, taken as a whole, is that it was not the intent of said Peter Voorhees thereby to contribute more than the use of the four lots and the buildings thereon to the partnership; and that, on the other hand, it was not the intent that said Drake should contribute more than the use of the $10,000, which was to become a part of the capital stock; and that it was the intention that at the end of the two years, or such other time as should be agreed upon, each partner should draw out that part of the capital stock contributed by him,—Voorhees the use of the lots and the buildings thereon, and Drake the $10,000; and that the profits only were to be subject to division as between the partners. It is no doubt true that this construction will do violence to some of the technical rules relating to partnerships, but it will come nearer giving force to all the terms of the instrument than any other which has been suggested.

This disposes of the claims of the receiver as to the four lots covered by the buildings, and the only thing to be further determined is as to his right to the two lots not so covered. As we have already suggested, it was no doubt the intent of the members of the partnership that these two lots should become the property of the firm, and that the equitable title was held by Peter Voorhees as trustee for said firm. From which it will follow that if the plaintiff, at the time she took the mortgage, had notice of these equities, her mortgage would be subject thereto, and she would be en-

titled to no rights in these lots excepting to the extent that by the payment of the purchase price therefor, from the money advanced by her, she acquired an equity superior to that of the firm.    But we are unable to find from the record that she had any notice of these equities.    These lots were in the actual possession of no one.    The equitable title of the four other lots and these two were alike in Peter Voorhees, and plaintiff was justified in assuming that they were all held as his property, and that the legal title, when procured by means of the money advanced by her, would pass to him and be subject to her mortgage, uninfluenced by any superior equities.

In our opinion the plaintiff was entitled to the relief prayed for in her complaint, not only as against said Voorhees and wife, but also as against the receiver.    The decree appealed from will be reversed and the cause remanded with instructions to enter a decree in accordance with the prayer of the plaintiff's complaint.    The plaintiff will recover her costs against all of the defendants.

STILES and SCOTT, JJ., concur.

DUNBAR, C. J. (*dissenting*).—I am unable to put the same construction on the contract, or article of agreement, that my brothers have.    The parties doubtless could have made an agreement, under the terms of which each party could have drawn out the amount which he advanced; but the agreement which they did make contained no such terms, nor in my opinion can any such terms be implied.    I think the judgment should in all things be affirmed.